IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 23-00116 |
| | ) |
| | ) |
| ZHE "JOHN" LIU | ) |
| and AB MA DISTRIBUTION | ) |
| CORPORATION, | ) |
| Defendants. | ) |

## COMPLAINT

The United States, through its undersigned attorneys, brings this action against Zhe "John" Liu and AB MA Distribution Corporation (AB MA) and alleges the following:

1. This is an action to collect unpaid customs duties and enforce monetary civil penalties, pursuant to 19 U.S.C. § 1592, relating to imported steel wire hangers that were transshipped through India and Thailand to avoid the payment of antidumping duties (ADD) and other duties on steel wire hangers imported from the People's Republic of China (PRC). In addition to failing to pay ADD lawfully owed, Mr. Liu and AB MA misclassified, or caused the misclassification of, steel wire hangers, and made, or caused to be made, false statements that allowed AB MA to avoid paying duties lawfully owed to the United States.

2. This Court possesses exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1582.

3. Defendant Zhe "John" Liu was a Florida resident who resided at 1448 Holts Grove Drive, Winter Park, Florida. He owned, operated, controlled, and was an agent of multiple companies through which he directed and abetted the importation of steel wire hangers,

including GL Paper, NC Supply, Inc. (NCS), NC Supply Group, LLC (NCSG), CEK Group, LLC (CEK), Garment Cover Supply, LLC (GCS), and AB MA.

4. NCS was incorporated in Florida on November 17, 2004, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida – which was Mr. Liu's personal residence. From on or about May 10, 2005, through on or about January 8, 2011, NC Supply filed entries with the United States for steel wire hangers imported from PRC. In or around 2014, U.S. Customs and Border Protection (CBP) placed NC Supply on nationwide sanction for unpaid duties.

5. NCSG was incorporated in Florida on October 6, 2010, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida – which was Mr. Liu's personal residence. From on or about March 4, 2012, through on or about August 23, 2012, NCSG filed entries with the United States for steel wire hangers imported from PRC. NCSG was dissolved on September 12, 2012.

6. GCS was incorporated in Florida on November 27, 2013, and listed a business address of 707 E Colonial Dr, Ste B-110, Orlando, Florida. From on or about September 12, 2014 to on or about February 14, 2017, GCS filed entries with the United States for steel wire hangers purportedly imported from Malaysia. GCS was dissolved on February 15, 2017.

7. GL Paper was incorporated in Florida on June 30, 2016, and listed a business address of 707 E. Colonial Dr., Orlando, Florida. From on or about February 6, 2017, through on or about August 15, 2017, GL Paper filed entries with the United States for steel wire hangers that it claimed were imported from Malaysia. GL Paper was dissolved on August 15, 2017.

8. AB MA was incorporated in Florida on February 20, 2018, and listed a mailing address of 1448 Holts Grove Circle, Winter Park, Florida – which was Mr. Liu's personal residence. From on or about May 7, 2018 to on or about April 25, 2019, AB MA filed entries

with the United States or served as the consignee (*i.e.*, the party receiving merchandise) for steel wire hangers purportedly imported from the Republic of India and the Kingdom of Thailand. AB MA was dissolved on January 17, 2020.

9. CEK Group, LLC (CEK) was incorporated in Florida on January 9, 2012, and listed a business address of 1448 Holts Grove Circle, Winter Park, Florida – which was Mr. Liu's personal residence. From on or about April 18, 2019 through on or about November 11, 2020, CEK filed entries with the United States for steel wire hangers purportedly imported from Thailand. CEK was dissolved on December 17, 2020.

10. Beginning in or around November 2004, Mr. Liu formed companies that he used to import steel wire hangers manufactured in PRC into the United States. Steel wire hangers are sold throughout the United States and are primarily used in dry cleaning businesses. Mr. Liu was knowledgeable about the U.S. Customs importation process, and personally engaged in the process of submitting documents and records supporting the entry of these hangers into United States.

11. On July 31, 2007, a wire hanger manufacturer in Alabama filed a petition with the International Trade Commission (ITC) on behalf of the domestic industry that produces steel wire hangers, alleging that industry was materially injured or threatened with material injury by reason of less-than-fair-value imports of steel wire garment hangers from PRC. Among other things, the petition detailed how these unfair trade practices had decimated the steel wire hanger manufacturing industry, leading to the closure of many manufacturing facilities across the United States and the loss of hundreds of U.S. jobs.

12. On October 18, 2007, the ITC issued its preliminary determination that an industry in the United States was materially injured by imports of steel wire hangers. *See Steel Wire Garment Hangers From China*, 72 Fed. Reg. 59112 (ITC Oct. 18, 2007).

13. On August 8, 2008, the U.S. Department of Commerce (DOC) announced its final determination on its investigation of unfair trade practices related to steel wire hangers imported from PRC. For the time period at issue, DOC set a "China-wide" antidumping duty rate of 186.98 percent for steel wire hangers imported from PRC.

14. After the imposition of the antidumping duty rate for steel wire hangers in 2008, Mr. Liu, through his companies NCS and NCSG, initially continued to import steel wire hangers from PRC. Initially, Mr. Liu truthfully declared that these hangers were manufactured in PRC and paid the applicable antidumping duties. However, in or around 2014, CBP placed NCS on nationwide sanction for unpaid duties.

15. Beginning in or around 2011 and through 2014, Mr. Liu communicated with third parties about the effect of the antidumping duties and possibly importing steel wire hangers from countries other than PRC.

16. In 2012, Mr. Liu formed CEK. In 2013, Mr. Liu participated in a DOC "New Shipper Review" of two PRC manufacturers of steel wire hangers, representing himself as president and employee of CEK. During this review, Mr. Liu demonstrated his thorough knowledge of antidumping duties.

17. In November 2013, Mr. Liu formed or caused the formation of GCS. Although Mr. Liu was the manager of GCS, another person was listed on the company's public filings as the Chief Operating Officer. Beginning in September 2014, Mr. Liu caused GCS to import steel wire hangers, claiming that they were manufactured in Malaysia. These steel wire hangers were, in fact, manufactured in PRC. By falsely declaring that these hangers were manufactured in Malaysia, GCS avoided paying the antidumping duty rate on steel wire hangers from PRC.

18. Beginning in June 2016, Mr. Liu formed or caused the formation of GL Paper. Although GL Paper was formed under another person's name, and public documents did not

disclose Mr. Liu's involvement with the company, Mr. Liu personally directed the importation of steel wire hangers through GL Paper.  From February through August 2017, Mr. Liu caused GL Paper to import steel wire hangers, claiming that they were manufactured in Malaysia.  These steel wire hangers were, in fact, manufactured in PRC.  By falsely declaring that these hangers were manufactured in Malaysia, GCS avoided paying the antidumping duty rate on steel wire hangers from PRC.

19. In May 2017, a domestic wire hanger manufacturer in Alabama filed an allegation under the Enforce and Protect Act against GL Paper.  That same month, CBP sent a questionnaire to GL Paper requesting information about the purported Malaysian manufacturers of the hangers imported by GL Paper.  In July 2017, the U.S. Government conducted a site visit associated with the purported manufacturers and discovered the companies were not manufacturing wire hangers.

20. Less than three weeks after the Government's site visit in Malaysia, in August 2017, GL Paper dissolved as a corporation.

21. Six months after GL Paper's dissolution, Mr. Liu formed, or caused the formation of, AB MA.  Although Mr. Liu formed AB MA using the name of another person, he personally directed AB MA's importation of steel wire hangers.  From May 2018 through April 2019, Mr. Liu caused AB MA to import 58 entries of steel wire hangers, or serve as consignee for wire hangers, claiming that they were manufactured in India and Thailand.  These steel wire hangers were, in fact, manufactured in PRC.  By misclassifying and falsely declaring that these hangers were manufactured in India and Thailand, AB MA avoided paying the antidumping duty rate and other duties on steel wire hangers from PRC.  The time, place, ports of entry, duties owed, and other details relating to these entries are identified on Attachment A to this complaint.

22. One week after AB MA's last importation of steel wire hangers, beginning in April 2019, and through November 2020, Mr. Liu caused CEK to import steel wire hangers, claiming that they were manufactured in Thailand. These steel wire hangers were, in fact, manufactured in PRC. By falsely declaring that these hangers were manufactured in Thailand, CEK avoided paying the antidumping duty rate and other duties on steel wire hangers from PRC. CEK was dissolved on December 17, 2020.

23. On December 7, 2022, CBP issued a pre-penalty notice to AB MA and Mr. Liu, for entries described in paragraph 21 above.

24. CBP received no response from AB MA.

25. On December 30, 2022, CBP issued a penalty notice to AB MA and Mr. Liu in the amount of $3,922,350.85, for entries occurring in May 2018 through April 2019, as described in paragraph 21 above. The penalty notice also demanded payment of $2,463,793.27 in lost revenue under 19 U.S.C. § 1592(d).

26. AB MA did not respond to the pre-penalty and penalty notices. On January 12, 2023, Mr. Liu field a petition seeking remission of the penalty and duty demand. On February 14, 2023, CBP issued a petition decision stating that no mitigation is warranted and reiterated the demand for payment of the $3,922,350.85 penalty and $2,463,793.27 in unpaid duties. In April 2023, Mr. Liu submitted a supplemental petition that CBP denied. Accordingly, CBP has exhausted all administrative remedies with respect to AB MA and Zhe "John" Liu.

## COUNT I

27. The allegations contained in paragraphs one through 26 are restated and incorporated by reference.

28. The acts described in paragraphs 10 through 22 were committed as the result of negligence by AB MA, by failing to exercise the degree of reasonable care and competence

expected from a person in the same circumstances, in violation of 19 U.S.C. § 1592(a)(1)(A) & (B).

29.   By reason of these negligent violations, pursuant to 19 U.S.C. § 1592(c)(2) and 19 U.S.C. § 1592(d), AB MA is liable to the United States for penalties in the amount of $3,798,516.56, and is liable to the United States for lost revenue in the amount of $2,386,966.26. The penalty amount is equal to the domestic value of steel wire hanger entries made by AB MA from June 8, 2018, to April 25, 2019.

## COUNT II

30.   The allegations contained in paragraphs one through 26 are restated and incorporated by reference.

31.   The acts described in paragraphs 10 through 22 were committed as the result of negligence by Mr. Liu, by failing to exercise the degree of reasonable care and competence expected from a person in the same circumstances, in violation of 19 U.S.C. § 1592(a)(1)(A) & (B).

32.   By reason of these negligent violations, pursuant to 19 U.S.C. § 1592(c)(2) and 19 U.S.C. § 1592(d), Mr. Liu is liable to the United States for penalties in the amount of $3,922,350.85, and is liable to the United States for lost revenue in the amount of $2,463,793.27. The penalty amount is equal to the domestic value of steel wire hanger entries made by AB MA from May 7, 2018, to April 25, 2019.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States respectfully requests (1) that the Court enter judgment against AB MA Distribution Corp., for violations of section 1592(A) & (B) at a culpability level of negligence, in the amount of $3,798,516.56 in penalties, pursuant to 19 U.S.C. § 1592(c)(3), and in the amount of $2,386,966.26 in lost revenue, pursuant to 19 U.S.C. § 1592(d), plus pre-

judgment and post-judgment interest and costs as provided by law, and such other relief as may be just and appropriate; and (2) that the Court enter judgment against Zhe "John" Liu for violations of section 1592(A) & (B) at a culpability level of negligence, in the amount of $3,922,350.85 in penalties, pursuant to 19 U.S.C. § 1592(c)(3), and in the amount of $2,463,793.27 in lost revenue, pursuant to 19 U.S.C. § 1592(d), plus pre-judgment and post-judgment interest and costs as provided by law, and such other relief as may be just and appropriate.

    Respectfully submitted,

    BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General

    PATRICIA M. McCARTHY
    Director

    FRANKLIN E. WHITE, JR.
    Assistant Director

    */s/ William Kanellis*
    WILLIAM KANELLIS
    ANNE M. DELMARE
    Trial Attorneys

OF COUNSEL:     U.S. Department of Justice
STEVEN J. HOLTKAMP     Civil Division
Staff Attorney     Commercial Litigation Branch
U.S. Customs and Border Protection     1100 L Street, NW, Suite 10000
Office of the Assistant Chief Counsel     Washington, D.C. 20009
610 South Canal Street, Suite 767     202 532 5749
Chicago, Illinois 60607

    *Attorneys for Plaintiff*

June 7, 2023